# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

GIANNA COCHRAN,

              Petitioner,      :      Case No. 2:18-cv-1282

  - vs -                         District Judge George C. Smith
                                       Magistrate Judge Michael R. Merz

TERI BALDAUF[1], Warden,
  Ohio Reformatory for Women,

                                    :
              Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought by petitioner Gianna Cochran with the assistance of counsel. It is before the Court for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 4), the Return of Writ (ECF No. 5), and Petitioner's Traverse (ECF No. 10).

The Magistrate Judge reference in this case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in this District (ECF No. 11).

**Litigation History**

On April 26, 2010, the Franklin County grand jury indicted Petitioner on eighteen counts of endangering children in violation of Ohio Revised Code § 2919.22. She waived jury trial and

---

[1] The Court takes judicial notice that Teri Baldauf has become Warden at the Ohio Reformatory for Women and has been automatically substituted as Respondent, pursuant to Fed.R.Civ.P. 25(d)..

1

tried the case to a judge who found her guilty on twelve counts and not guilty on the remaining six. The judge sentenced her to five years' imprisonment on each of the felony counts and six months' imprisonment on each of the misdemeanor counts, with the felony time to be served consecutively and the misdemeanor time concurrently. Thereafter the case generated a complex history which is recited at length in the Return of Writ and will be adverted to here only as necessary.

After the conclusion of state court proceedings, Cochran filed her Petition for Writ of Habeas Corpus in this Court on October 25, 2018. Respondent concedes the filing is timely. Petitioner pleads the following grounds for relief:

> **Ground One:** The Petitioner was denied due process when she was convicted without sufficient evidence to support said convictions.
>
> **Supporting Facts:** The state failed to presented [sic] sufficient evidence to support the 9 convictions to Child Endangering.
>
> **Ground Two:** Petitioner was deprived of her 5th and 14th Amendment rights when the trial court violated the Sentencing Package doctrine.
>
> **Supporting Facts:** The trial court violated Due Process when it intentionally imposed a 25-year sentence as part of a "package" in violation of the Sentencing-Package doctrine.
>
> **Ground Three:** Petitioner was deprived [of] effective assistance of counsel when counsel failed to present exculpatory evidence.
>
> **Supporting Facts:** Trial counsel failed to present evidence that would have made a difference in the conviction.

(Petition, ECF No. 1, PageID 6, 8, 9.)

# Analysis

**Ground One: Insufficient Evidence**

In her First Ground for Relief, Ms. Cochran claims she was convicted on constitutionally insufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship,* 397 U.S. at 361. A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S.Ct. 709, 715, 193 L.Ed.2d 639

(2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(*en banc*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from

> evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, [2], 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. [766], [773], 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012)(*per curiam*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*).

**Procedural Default?**

This claim was presented as Cochran's first assignment of error on direct appeal and overruled. *State v. Cochran*, 2012-Ohio-5899 (10th Dist. Dec. 13, 2012). Respondent claims this First Ground for Relief is procedurally defaulted because Cochran did not appeal from the adverse decision of the Tenth District Court of Appeals ("Tenth District") to the Supreme Court of Ohio (Return, ECF No. 5, PageID 761). Cochran counters that she presented this claim in her Memorandum in Support of Jurisdiction in Ohio Supreme Court Case No. 2013-464 (Traverse, ECF No. 10, PageID 807).

The record reflects that the Tenth District entered judgment on Cochran's direct appeal on December 13, 2012 (State Court Record, ECF No. 4, Ex. 13, PageID 134-35). Cochran moved for reconsideration by that court. *Id.* Ex. 14 at PageID 174, *et seq*. The Tenth District denied that motion on February 5, 2013. *Id.* Ex. 16 at PageID 186, *et seq*. Only after that did Cochran appeal to the Supreme Court of Ohio, and her Notice of Appeal makes it clear she is appealing from the February 5, 2013, decision on the motion to reconsider. *Id.* at Ex. 17 at PageID 193, *et seq*.

In her Memorandum in Support of Jurisdiction, Cochran does raise her insufficiency of the evidence claim as Proposition of Law II. (State Court Record, ECF No. 4, Ex. 18 at PageID 196. In opposing jurisdiction, the State responded on the merits to Proposition II. *Id.* at Ex. 19 at PageID 227-29. However, the Supreme Court of Ohio accepted jurisdiction only on Proposition of Law I (Entry, State Court Record, ECF No. 4, PageID 232.)

In the Return, Respondent acknowledges that the insufficiency claim was raised, but notes that it was not done in accordance with the Supreme Court Rules of Practice. Those Rules provide that filing a motion for reconsideration in the court of appeals tolls the time for appealing to the Ohio Supreme Court. Ohio S.Ct.Prac.R. 7.01(A)(5)(a). Once the court of appeals renders a decision on the motion for reconsideration, a litigant has the usual forty-five days to appeal and the Rule provides the papers that must be filed with that notice. *Id.* at 7.01(A)(5)(c). While Cochran's appeal to the Supreme Court of Ohio was timely, she did not include all the papers required by the just-cited rule. That is, she only indicated she was appealing from the February 2013 ruling, not the December 2012 ruling. (See Notice of Appeal, State Court Record, ECF No. 4, Ex. 17.)

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights

6

claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "[A]bsent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner

can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

The Magistrate Judge is not persuaded that the State has proven a procedural default of Ground One. Although there is a state procedural rule (S.Ct.Prac.R. 7.01(A)(5)(c)) with which Petitioner did not comply, it is not clear that the Ohio Supreme Court enforced that rule against her. The mere existence of a procedural bar is insufficient; the state courts must have relied on it. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). Whether a state court's decision is based on a procedural bar is a legal question. *Combs v. Coyle,* 205 F.3d 269, 275 (6th Cir.2000); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), citing *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991)(*per curiam*). A claim is not procedurally defaulted unless the state court actually enforced it. *Wogenstahl v. Mitchell*, 668 F.3d 307, 327 (6th Cir. 2012).

In addition, state procedural rules bar federal habeas corpus review only if the rules are "firmly established and regularly followed." *Walker v. Martin,* 562 U.S. 307, 316 (2011); *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *Barr v. City of Columbia*, 378 U.S. 146 (1964); *James v. Kentucky*, 466 U.S. 341, 348-49 (1984); *Rogers v. Howes,* 144 F.3d 990 (6th Cir. 1998); *Jones v. Toombs,* 125 F.3d 945, 946-47 (6th Cir. 1997). Respondent has offered no proof that this particular rule is regularly enforced.

**The Merits of Ground One**

The Tenth District Court of Appeals decided Cochran's sufficiency of the evidence claim (combined with a manifest weight claim) as follows:

> **[\*P30]** In her first assignment of error, appellant makes both general
> and specific arguments as to why there is insufficient evidence to

support her convictions and why the convictions are against the manifest weight of the evidence. Generally, appellant argues that although the child endangering statute does not require proof of serious physical harm, the lack of such proof as to any of the incidents, along with the inconclusiveness of the recordings and appellant's reasonable explanations for her actions, demonstrate the state's failure to prove her guilt beyond a reasonable doubt. Specifically, appellant also addresses each incident and argues why the evidence is insufficient and the convictions are against the manifest weight of the evidence. [Footnote omitted.]

**[\*P31]** The relevant portions of R.C. 2919.22, the statute prohibiting child abuse, read as follows:

> (A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *
>
> (B) No person shall do any of the following to a child under eighteen years of age * * *:
> * * *
> > (2) Torture or cruelly abuse the child;
> >
> > (3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child[.]

**[\*P32]** A violation of R.C. 2919.22(A) is a misdemeanor of the first degree, while violations of R.C. 2919.22(B)(2) or (3) are felonies of the third degree. In the instant case, appellant was found guilty of a combination of these charges. In order to properly analyze appellant's claims that her convictions are not supported by sufficient evidence and are against the manifest weight of the evidence, we must consider each incident individually.

**[\*P33]** The state was not required to prove serious physical harm in order to support any of the offenses charged in the indictment. Instead, the state was only required to prove that appellant created a *substantial risk* of serious physical harm in order to prove the felony offenses. In order to prove the misdemeanor offenses, the state was

9

only required to prove a *substantial risk* to the health or safety of the child. A "substantial risk" is defined in R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

**[\*P34]** Recklessness is the culpable mental state required for child endangering. *See State v. McGee*, 79 Ohio St.3d 193, 195, [1997-Ohio-156, ]680 N.E.2d 975 (1997); *State v. Adams*, 62 Ohio St.2d 151, 152, 404 N.E.2d 144 (1980). "Recklessness" is defined in R.C. 2901.22(C), which states:

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

### 1. Count 1

**[\*P35]** Regarding the August 18, 2009 misdemeanor incident involving I.S. in which appellant pull[ed] the eight-month-old child by his clothing back and forth along the carpet, appellant argues the evidence fails to demonstrate that I.S.'s health was in jeopardy or to identify the risk that he was facing, or that appellant acted recklessly. We disagree.

**[\*P36]** Appellant repeatedly and recklessly slid the eight-month-old infant back and forth on the carpet by holding onto his clothing, which in turn caused the infant to cry. Appellant's actions created a substantial risk to the infant's health and safety and violated a duty of care in that her actions created a strong possibility that the child would be injured, such as by striking another person or object during the movements or by sustaining carpet burns or any number of other injuries during the rapid sliding movements. Also, given that the child began crying when appellant began the sliding movements, it is apparent the child was suffering from the movements.

### 2. Count 2

**[\*P37]** In the August 19, 2009 incident, appellant argues the state failed to prove she committed the felony offense of child endangering. Specifically, appellant disputes that she tortured or

cruelly abused R.P. based upon her manner of holding the child. Appellant also disputes the trial court's finding that appellant restrained the child for a prolonged period, arguing the restraint only lasted 30 seconds, and further submits there is no evidence demonstrating appellant was aware of any risk involved with her conduct. We disagree.

**[\*P38]** Appellant wrapped both of her arms around the child's head and pushed her face into a cloth on appellant's chest as the child was crying uncontrollably and kicking her legs, which were dangling near appellant's stomach. Appellant informed the child she would "make [her] stop," as she attempted to muffle the child's sobs by pressing the child's face into the cloth. Appellant's actions were smothering the child, thereby creating a substantial risk of serious physical harm. Appellant's actions were reckless and also constituted torture or cruel abuse or physical restraint in a cruel manner or for a prolonged period of time, though it lasted for no more than 30 seconds. Whether or not appellant intended to inflict pain and whether or not actual injury was inflicted are irrelevant, as neither one was required to be proven.

### 3. Count 8

**[\*P39]** With respect to the August 31, 2009 incident, appellant was convicted of excessively physically restraining J.P. for a prolonged period and of creating a substantial risk of serious physical harm. Appellant claims the state failed to prove any of these elements.

**[\*P40]** We believe the audio and video recordings of that incident demonstrate that appellant firmly pressed a blanket or pillow over J.P.'s face while he was crying as she stood over him, watching as he kicked and flailed. Upon removing the object, the child sobbed and gasped for air. Like the trial court, in viewing this evidence in a light most favorable to the state, we find that this conduct demonstrates appellant recklessly tortured or cruelly abused the child or physically restrained the child in either a cruel manner or for a prolonged period of time and created a substantial risk of serious physical harm. As stated previously, smothering the child and muffling his cries clearly qualifies as creating a substantial risk of serious physical harm.

### 4. Count 10

**[\*P41]** In the September 1, 2009 misdemeanor incident, appellant asserts she was simply playing with her daughter, which she

contends is her obligation to do, when she carried her upside down and swung her around the room. Appellant disputes that her conduct violated a duty of care and argues that while her conduct may have been negligent or imprudent, it was not reckless. We disagree.

**[*P42]** During this incident, we find the evidence shows appellant yelled at her daughter, spanked her roughly, and then picked her up by one ankle and carried her upside down across the room when the child refused to walk to the other side of the room. Appellant continued to hold the child upside down by the ankles and swung her back and forth and around in circles while the child cried and yelled "mommy" numerous times. Afterward, appellant repeatedly asked L.B. if she "like[d] that" in a harsh tone of voice. There is more than enough evidence to demonstrate that appellant created a strong possibility of risk to L.B.'s health or safety by her actions and violated a duty of care, protection, or support to the child. The trial court was free to reject appellant's explanation of the incident.

**5. Count 11**

**[*P43]** Regarding the August/September 9, 2009 incident in which appellant carried two-year-old A.M. upside down by her ankle and covered her face with a blanket, appellant argues the state failed to present evidence of risk of serious physical harm. Appellant further submits that carrying the child by her foot is not torture, the child was not far off the ground, and it only lasted a few moments.

**[*P44]** We believe the evidence on this count is sufficient to support the conviction for felony child endangering and it is not against the manifest weight of the evidence. The evidence supports a finding that appellant recklessly tortured or cruelly abused A.M. or physically restrained her in a cruel manner or for a prolonged period, thereby creating a substantial risk of serious physical harm when she carried the child upside down by the ankle with one hand while the child cried loudly, tossed her on the couch, and used a blanket to smother the child and muffle her cries for several minutes. During a portion of this time, appellant's entire body was covering the child as the child lay on the couch as appellant pressed the blanket over her face. Smothering the child with a blanket for several minutes creates a substantial risk of serious physical harm and constitutes cruel abuse or physical restraint for a prolonged period or in a cruel manner.

### 6. Count 13

**[*P45]** As to the September 11, 2009 incident, appellant disputes the trial court's finding that she physically restrained A.M. for a prolonged period of time and cruelly abused her. While she admittedly did not gently place the child on the couch, appellant submits her conduct did not rise to the level of cruel abuse.

**[*P46]** During this incident, appellant roughly pulled a crying A.M. off the floor and tossed her onto the couch. Appellant sat down on the couch next to A.M. and used a blanket to muffle A.M.'s cries for a couple of minutes. After appellant walked away, A.M. continued to gasp and sob. Again, we find muffling the child's cries with a blanket and smothering her is more than sufficient to demonstrate appellant recklessly tortured or cruelly abused A.M. or physically restrained her in a cruel manner or for a prolonged period of time, and thereby created a substantial risk of serious physical harm.

### 7. Count 17

**[*P47]** Appellant argues the incident that occurred on September 25, 2009 does not support a finding that she physically restrained A.M. for a prolonged period of time and/or cruelly abused her. Appellant further argues that because her back is to the video camera and the child is not visible when appellant is sitting on the floor, the evidence is insufficient to support a finding that she committed cruel abuse against A.M. We disagree.

**[*P48]** The evidence presented supports the finding that appellant recklessly tortured or cruelly abused A.M. or physically restrained her in a cruel manner for a prolonged period, thereby creating a substantial risk of serious physical harm. The evidence is sufficient to demonstrate appellant committed the felony offense of child endangering. Although appellant's back is to the video recorder, based upon the positioning of appellant's arms, it is apparent that appellant is pressing down on the child and the child's arms are moving as she struggles. It is also apparent that appellant is smothering the child, as the child grows quiet and then can be heard screaming and gasping while appellant asks her several times if she is done and complains that there is no reason for her crying. At one point, appellant's entire body is hunched over the child as she is pressing down on the child. As the trial court noted when it announced its verdict, in watching the video recordings in the situations where the child's face was covered or appellant is pressing against or down on the child, the natural conclusion is that appellant is suffocating the child. Coupled with the audio, where the child's

> cries are muffled and the child can be heard choking and gasping for air, the only reasonable conclusion was that appellant was smothering the child.
>
> [*P49] Based upon the foregoing analysis, we find all of the essential elements of the crimes have been demonstrated and the evidence is legally sufficient to support appellant's convictions for child endangering. Furthermore, we cannot say, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, as well as resolving any conflicts in the evidence, that the trial court clearly lost its way and created such a manifest miscarriage of justice that the convictions for child endangering must be reversed. Accordingly, we overrule appellant's first assignment of error.

*State v. Cochran*, 2012-Ohio-5899.

Petitioner asserts this decision of the Tenth District is both an objectively unreasonable application of clearly established Supreme Court law and an unreasonable determination of the facts on the basis of the evidence presented in the State court proceeding. That is her burden to prove under 28 U.S.C. § 2254(d)(1) and (2).

Petitioner focuses on the alleged failure of the State to prove two elements of the crimes, her mental state and the degree of risk of harm to the children in her care. The Tenth District also focused on those two elements. See ¶¶ 33 and 34, *supra*.

The heart of Petitioner's argument on Ground One is her counsel's description of what the relevant video[2] shows. See, e.g., Traverse, ECF No. 10, PageID 808 as to the first and second incidents, PageID 810 as to the eighth and tenth incidents. But counsel's description of what the video shows is argumentative hearsay. Both the trial and appellate courts actual saw the video and made findings based on what they saw. If Mr. Bickel or someone else had sat and watched Cochran

---

[2] Jonathan Bickel, Petitioner's ex-boyfriend and father of two of her children, set up a hidden wireless webcam to record Cochran's behavior. It was the principal evidence at trial, admitted as State's Exhibit 1, and essentially stipulated as to authenticity. *State v. Cochran*, 2012-Ohio-5899, ¶¶ 5-8.

interact with the children, their descriptions would have been admissible to prove what happened. But the state courts had no need of such eyewitness descriptions, they were able to be substitute eyewitnesses themselves. And just as a federal habeas court would defer to a jury's verdict about what conduct had been observed by eyewitnesses, so much more must we defer to state court findings based on video of what happened.

The other approach Cochran takes in her Traverse is to argue that the conduct the state courts observed does not amount to torture or cruel abuse, but what constitutes torture or cruel abuse under the Ohio statutes is a question for the state courts to decide. To put it another way, the Supreme Court has never defined as a matter of constitutional law what the states can punish as child endangerment.

With respect to the sixth incident, the Traverse describes Cochran's conduct as grabbing her daughter by the ankle, flipping her upside down, and swinging her around (ECF No. 10, PageID 809). Counsel comments that "[t]his is common play between adults and small children." *Id.* This seems to suggest the Court should take judicial notice of what constitutes common play in these circumstances. But what constitutes common play is not a matter that is open and notorious and to take judicial notice would be to substitute facts found by this Court for those found by the trial court, which is improper under 28 U.S.C. § 2254.

In sum, Petitioner has not shown that the Tenth District's conclusions on the sufficiency of the evidence are an objectively unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of the facts. The First Ground for Relief should be dismissed on the merits.

**Ground Two: Violation of the Sentencing Package Doctrine**

Petitioner has withdrawn the Second Ground for Relief (Traverse, ECF No. 10, PageID 810).

**Ground Three: Ineffective Assistance of Trial Counsel**

In her Third Ground for Relief, Cochran claims her trial attorney provided constitutionally ineffective assistance when he failed to present Judge Christopher Geer as a witness (Traverse, ECF No. 10, PageID 810).

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).

Respondent rightly complains that the Petition does not properly plead a claim of ineffective assistance of trial counsel in that it gives no factual content to the allegation of ineffective assistance. However, the Traverse adequately supplies that deficiency and the more judicially economical approach is to decide this claim on its merits.

This claim was first pleaded in Cochran's petition for post-conviction relief. There she characterized Judge Geer as a person who would "offer an expert opinion on what was depicted in the video recording." (State Court Record, ECF No. 4, PageID 247.) In denying the petition, Judge Cain found that Cochran had not provided an affidavit from Judge Geer about any projected testimony (Decision on Petition, State Court Record, ECF No. 4, PageID 292). He also found Judge Geer's involvement was only as to Cochran's children, not any of the other victims, making any projected testimony "almost totally irrelevant." *Id.* at 292-93. He continued:

17

> (2) Expert testimony is not appropriate to tell the trial [sic] of fact what a video shows. The video recording speaks for itself. It is what it is. Expert testimony would not aid the trial [sic] of fact in determining what it was seeing or in applying the legal definition of child endangering to what it saw.
>
> (3) If Judge Geer could not offer expert testimony, then he could only be called as a factual witness. But he was not a witness to any of the incidents. He merely viewed a video tape the same as this Court did. It seems the Defendant is arguing that Judge Geer should have been substituted as the trier of fact.

(ECF No. 4, Ex. 26 at PageID 293.) On appeal the Tenth District agreed that the post-conviction petition was deficient for failure to provide an affidavit from Judge Geer and that his testimony would have been almost totally irrelevant. In the absence of any evidence to the contrary, it upheld trial counsel's decision not to call the judge as a strategic choice (Decision, State Court Record, ECF No. 4, Ex. 30 at PageID 334-40).

In her Traverse, Cochran claims Ohio Revised Code § 2953.21 does not require affidavits, but only "documentary evidence" which she provided by way of a certified transcript of what Judge Geer had said in open court (ECF No. 10). She asserts she had not intended to call Judge Geer as an expert, but to rebut the testimony of Detective Richard Moore that the observed conduct constituted one of the worst cases of child abuse he had ever seen.

The Magistrate Judge concludes the state courts' decision on this ineffective assistance of trial counsel claim is not an objectively unreasonable application of *Strickland, supra*. Fundamentally, Detective Moore's opinion about whether this was the worst case of child abuse he had seen was irrelevant; had there been a jury present, it would have been inappropriate for them to hear it. But the case was tried to the bench and trial judges are presumed to be able to ignore irrelevancies. Certainly Judge David Cain, as an experienced and long-serving trial judge, would have been able to do so. Given that set of circumstances, Judge Cain's comment that Judge

Geer's testimony would have been irrelevant bears substantial weight. As he put it, the video speaks for itself and it would not have been helpful for him to have another judge to offer an opinion about what the video shows.

Because of the absence of an affidavit from Judge Geer, we do not know whether he would have been a willing witness or not. It would certainly be unusual to have one judge appear before another judge as a witness at trial to tell the trial judge whether or not what he can see for himself constitutes child endangerment. Cochran offers no proof at all that it fell below professional standards at the time of trial to fail to call as a witness a judge who had observed the same evidence and ascertain his opinion on it. It would of course be another matter if Judge Geer had rendered a decision which was binding as a matter of collateral estoppel at the criminal trial, but that is certainly not what happened.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability.

June 6, 2019.

s/ *Michael R. Merz*  
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).